The plaintiffs, as tax-payers of the town of Thompson, Sullivan county, brought this action against the defendants, railroad commissioners of the town, appointed under chapter 553, Laws of 1868 (vol. 1, 1128), to restrain them from paying out moneys in their hands, paid to them by the collector of the town, by direction of the warrant of the board of supervisors of the county, to pay interest due and to become due upon bonds claimed to have been issued for and on account of the town, to aid in the construction of a railroad from Monticello, in said county, to Port Jervis, in the county of Orange, under the provisions of said act, in satisfaction of such interest, and to have such money refunded to the several tax-payers of the town, upon the ground that *Page 24 
such bonds were entirely void. The complaint sets out the facts which the plaintiff insists shows that the bonds were not issued as required by the provisions of the act, and that they are not valid obligations against the town, but mere nullities. The counsel for the respondents insists that the plaintiffs, showing no other right than as tax-payers of the town, cannot as such maintain an action in equity against the defendants for these purposes. The counsel for the appellants insists that, as this objection was not interposed by demurrer or answer, or raised upon the hearing before the referee, it was waived, and cannot be made upon the appeal to this court, and cites authorities showing that where the only objection to the exercise of equity jurisdiction is that the party has an adequate legal remedy, such objection is waived, unless interposed by demurrer or answer, and if not, cannot be made upon the hearing of the case. But the objection in this case is that a tax-payer cannot, as such, maintain an action in equity to restrain the collection of a tax, or the application of the proceeds to the purposes for which it was raised. It is for the plaintiffs to show that this is within the jurisdiction of courts of equity. To authorize a review by this court, exceptions must be taken in equity cases the same as in legal. In the present case the referee, in his conclusions from the facts found by him, held that the plaintiffs were entitled to an injunction restraining the defendants from applying the money in their hands to the payment of the interest upon the bonds, and that the same should be refunded to the tax-payers of the town in the proportions paid by them respectively. To each of these conclusions the defendants excepted. These exceptions raise the question whether the plaintiffs were entitled to this relief in the action. The case shows that bonds had been issued and were outstanding, which the holders claim were valid obligations against the town. The money in question was the proceeds of a tax levied by the board of supervisors of the county upon the town, for the purpose of paying the interest on these bonds. The relief was sought by the plaintiffs upon *Page 25 
the ground that the bonds were void, and, consequently, that no interest was payable thereon.
The question whether a tax-payer can maintain an action in equity against the official custodian of the proceeds of a tax levied by an official board to pay an indebtedness claimed against a town, county, or the State, to determine the validity of the obligation, is one of vast practical importance; and if it can, we should expect to find numerous cases, where the aid of equity had been so invoked, and the relief granted. But no such case has been cited by the counsel for the appellants from the reports of this country or England. In Moors v. Smedley (6 J. Ch., 28), a bill was filed by a tax-payer, and an injunction obtained staying the collection of a tax levied by the board of supervisors of the county of Clinton, upon the town of Moors in that county, for the payment of bounties for wolves killed in the town, which was alleged by the bill to have been done without any legal authority therefor. Chancellor KENT, among other things in his opinion, said, that he could not find by any statute, precedent or practice, that it belonged to the jurisdiction of chancery, as a court of equity, to reverse or control the determination of the supervisors in their examination and allowance of accounts as chargeable against their county, or any of its towns, and in causing the moneys so allowed to be raised and levied. And in another part of the opinion he further says: That the review of all errors, mistakes and abuses in the exercise of subordinate public jurisdictions, and in the official acts of public officers, belonged to the Supreme Court. That in his opinion it belonged exclusively to that court. That it had always been a matter of legal, and never a matter of equitable cognizance. That it was not a case of private trust, but the official act of a political body, and that in the whole history of the English Court of Chancery, there was no instance of the assertion of such a jurisdiction as was contended for. That the superintending control in these cases had always been exercised in the Court of King's Bench, and nowhere else, and that court had proceeded by certiorari, mandamus, prohibition, *Page 26 
information, etc., and he added that he could only regret that he could not afford a remedy to the party aggrieved. It requires no argument to show that if courts of equity have no jurisdiction to restrain the collection of a tax imposed without authority of law, it has none to control the application of the proceeds while in the hands of the proper official custodian, after collection, upon the ground that there was no law authorizing its imposition and collection. In Heywood v. The City of Buffalo
(14 N.Y., 534), the case of Moors v. Smedley is referred to as containing a sound exposition of the jurisdiction of courts of equity upon the point adjudged, and that case was decided by this court unanimously upon the same principle. In The SusquehannaBank v. The Board of Supervisors of Broome Co. (25 N.Y., 312), it was held by this court that an action would not lie to restrain the collection of a tax, on the ground that the assessment was illegal. (See the cases cited in the opinion of DENIO, J.) The learned judge says, in his opinion, that it is not necessary to show that the party complaining in this class of cases could have his grievance examined in some other form, but he supposes that a certiorari might, at the discretion of the Supreme Court, be awarded to determine the validity of the tax. As remarked, supra, the utter absence of the exercise of any such jurisdiction by courts of equity, both in England and in this country, in both of which the cases where such jurisdiction, if it exists, would be applicable, are so very numerous, is strong, if not conclusive evidence against its existence. But when in connection with this the authorities cited supra are examined, together with the cases cited in opinions given by the learned judges, by which it is shown that, in every instance where such jurisdiction has been invoked, it has been held that it had no existence, no doubt can be entertained. If such jurisdiction in courts of equity was deemed necessary for the public welfare, it would be for the legislature, in the proper way, to confer it. The court clearly has no power to assume it in the absence of such a provision. I think, should it be so conferred, the wisdom of *Page 27 
the sages of the law, who have so uniformly determined against it, would soon become manifest to the most obtuse. To permit every tax-payer in the State, who believes that a tax for an unconstitutional purpose had been imposed by the legislature, to commence an action in equity against the State treasurer to restrain him from applying the proceeds in his hands to the purpose directed, and compel him to distribute the fund among the tax-payers of the State, and upon the same principle every tax-payer of a city, county, town or other municipal corporation, to maintain a like action for like purposes, against the official custodian of its funds, upon the ground that the tax, or some portion, was not authorized by law would, I think, lead to the most alarming results. It would be the direct opposite of one of the acknowledged sources of equity jurisdiction, which is, that it exists when necessary to prevent a great number of suits. This would, I think, inevitably cause an immense number. But it is sufficient, irrespective of this, that, under the law of this State, no such jurisdiction exists. That the nature of the claim against the town, whether interest upon bonds issued to aid in the construction of a railroad, or any other purpose, can make no difference in this respect, requires no argument.
The order of the General Term reversing the judgment and directing a new trial must be affirmed, and judgment given for the defendants, upon the stipulation.
FOLGER, ANDREWS, and JOHNSON, JJ., concur; CHURCH, Ch. J., and RAPALLO, J., dissent; ALLEN, J., not voting.
Order affirmed, and judgment accordingly. *Page 28