PLINY NEWTON, SUPERVISOR OF THE TOWN OF ORLEANS, APPELLANT, v. JOHN KEECH, COLLECTOR OF THE TOWN OF ORLEANS, SAMUEL W. GATES AND OTHERS, RAILROAD COMMISSIONERS OF THE TOWN OF ORLEANS, RESPONDENTS.

*Town bonds in aid of R. R. Co. — collection of tax for payment of — right of tax-payer to maintain action to restrain its being paid over — chap. 161 of 1872.*

Where a board of supervisors have directed a tax to be levied and collected, for the purpose of paying interest upon town bonds issued in aid of a railroad company, which bonds the Court of Appeals have declared to be invalid and void, a tax-payer of the town may maintain an action under chapter 161 of 1872 — providing for the maintenance of actions by tax-payers to prevent waste or injury to the funds of the county — to restrain the collector of the town from paying over to the railroad commissioners the moneys in his hands, arising from the collection of the said illegal tax.

*Ayers* v. *Lawrence* (59 N. Y., 192) followed; *Kilbourne* v. *St. John* (59 id., 21) distinguished.

APPEAL from a judgment in favor of the defendants, entered upon the trial of this action by the court without a jury.

*Levi H. Brown,* for the appellant.

*Wayland F. Ford,* for the respondents.

.TALCOTT, J.:

This is an appeal from a judgment entered at a Special Term in Jefferson county, on a trial by the court. The action was brought, on the equity side of the court, to restrain John Keech, the collector, from paying over to Samuel Gates and others, railroad commissioners of the town of Orleans, claiming to have been appointed as such under the town bonding act, as amended in 1869, certain moneys in the hands of said Keech, as such collector, and which had been ordered by the board of supervisors of Jefferson county to be collected, for certain interest due and to become due on $80,000 of the bonds of the town issued to the Clayton and Theresa Railroad Company, in payment for the stock of that company.

The proceedings before the county judge, for the purpose of bonding the town for the benefit of the railroad, were reversed and set aside by the Court of Appeals as void and of no effect, by a decision made by that court on the 24th of February, 1873; but this action was commenced on the 30th day of January, 1873, a short time before the decision of the Court of Appeals, and whilst the decision of the Supreme Court upon the certiorari, affirming the validity of the proceedings before the county judge, was in full force and unreversed.

The bonds of the town were issued by the commissioners, and delivered to the secretary and treasurer of the railroad company on the 2d day of April, 1872, after the writ of certiorari was issued, and whilst the same was pending undecided in the Supreme Court; and they received from the railroad company, on a subscription made by the said commissioners in the name of the town, a certificate for the nominal amount of $80,000 of the capital stock of the said railroad company, in exchange for the said $80,000 of the town bonds, and they still retain the said certificate of stock.

No notice in writing of the issuing of the said writ of certiorari was served upon the said commissioners, nor was the said writ directed to them or any of them, the same having been directed to the county judge and county clerk of Jefferson county; but the said commissioners and the railroad company were fully informed of the issuing of the said writ of certiorari, and of the pendency thereof at the time of the subscription for the stock in the name of the town, and at the time of the issuing of the said town bonds, and the exchange thereof for the said certificate of stock.

After the decision of the Supreme Court, affirming the proceedings before the county judge and the appointment of said commissioners by him, and before the reversal of such decision by the Court of Appeals, to wit, in November, 1872, the said commissioners applied to the board of town auditors of said town, at a regular session thereof, and presented a claim for the interest on said town bonds, which became due in August, 1872; and also that which, according to the tenor of the said bonds, would fall due in February, 1873, and in August, 1873, amounting in all to the sum of $8,154.75, and the claim was disallowed by the four town auditors. Subsequently, and in the same month of November, 1872, the said commissioners caused to be presented to the board of supervisors of the county of Jefferson a statement in writing, a copy of which is annexed to the complaint, and which was, in substance, the same claim which had been rejected by the board of town auditors, and thereupon the said board of supervisors, against the objection and protest of the plaintiff, then a member of such board, voted and ordered that there be levied and collected upon the said town of Orleans the said sum of $8,154.75, for the interest due and to become due, as aforesaid, by the terms of said bonds, according to the report and statement of the said commissioners. And thereafter, in the same month of November, 1872, the said board of supervisors issued their warrant in the usual form, directed to the defendant Keech, collector of the town of Orleans, commanding him to collect of the several persons and corporations named in the assessment roll, to the said warrant annexed, the several sums mentioned in the last column of the said assessment roll opposite their respective names; and from the moneys so collected to pay, on or before the first day of February,

then next, amongst other things, the sum of $8,154.75 to the said railroad commissioners or their successors, for principal and interest on the said town bonds, the sum set opposite their respective names, which, in the aggregate, embraced the $1,854.75, and included, in addition, the various sums ordered to be collected in said town for town, county and State purposes. And the said John Keech, as such collector, had collected all, or nearly all, of the moneys specified in the assessment roll, and at the time of the commencement of this suit was about to pay the same over to the said railroad commissioners, as he was ordered to do by said warrant.

The complaint in this case was dismissed at the Special Term, on the general ground that a tax-payer, as such, cannot, by a suit in equity, draw in question the validity of the proceedings imposing a tax, or have direction given to the money in the hands of the collector.

The decision at the Special Term was undoubtedly in accordance with the settled law, so far as it was generally known and understood at the commencement of this suit, and in accordance with the authorities. (Mooers v. Smedley, 6 Johns. Ch., 30; Ayers v. Lawrence, 63 Barb., 454, decided by the General Term of this department.) The same principle was fully sustained by the case of Kilbourne v. St. John, decided by the Court of Appeals, November 10, 1874 (59 N. Y., 21), which latter decision would seem entirely to cover the present case, unless the law has been changed by a statute hereafter adverted to. The case of Ayers v. Lawrence (supra), however, went to the Court of Appeals, was argued nine days after the decision in Kilbourne v. St. John, and decided on the 8th day of December, 1874, and the majority opinion reversing the decision of this court is reported in 59 N. Y., 192. The counsel for the appellant in the Court of Appeals referred to and relied upon a statute passed in 1872, which had not been referred to on the argument in the Supreme Court, and escaped attention at the time.

The decision of the Supreme Court in Ayers v. Lawrence was reversed in the Court of Appeals by four judges against the dissent of the other three, wholly upon the ground that the law as applied to that case had been changed by the act entitled " An act for the

protection of tax-payers against the frauds, embezzlements, and wrongful acts of public officers and agents." (Chap. 161, Laws of 1872.)

The action in *Ayers* v. *Lawrence* was brought by certain tax-payers against commissioners appointed under the act of 1869, and the acts amending the same, to restrain the issuing of bonds of the town of Milo, in the county of Yates, to or for the benefit of the Sodus Bay, Corning and New York Railroad Company. The complaint charged various defects, irregularities and illegalities in the proceedings to bond the town, similar in character to those for which the proceedings to bond the town of Orleans were reversed in the Court of Appeals, and the question came up on demurrer, which admitted the defects alleged. Thus it will be seen that the case of *Ayers* v. *Lawrence* differs from the case under consideration, in this, that the object in the suit in the former case was not to interfere with moneys arising from an illegal tax already collected, but to restrain the creation or attempted creation of a liability against the town by the issue of town obligations, by *de facto* officers, which might in the future occasion taxation of the tax-payers of the town for their payment.

In the case now under consideration, the tax has been imposed and the money paid or collected, and is in the hands of the collector, about to be paid over as directed by the supervisors who imposed the tax.

The act in question (chap. 161, Laws of 1872) provides that "all officers, agents, commissioners, and other persons acting for, or on behalf of any county, town or municipal corporation, and every of them, may be prosecuted, and an action or actions maintained against them, to prevent waste or injury to any property, funds, or estate of such county, town or municipal corporation, by any person residing in such county, town or municipal corporation, assessed for and liable to pay taxes therein, or who has paid taxes therein within one year previous to the commencement of any such action or actions."

The plaintiff is a resident and tax-payer in the town of Orleans, and as such assessed for property, real and personal, upon the assessment roll, in and for said town, as alleged and found. The funds are the funds of the town or of the county, by whose direc-

tion they were levied and collected. If it is proper for a court of equity to interfere to prevent the issue of the bonds in the first instance under the act of 1872, as was held in. *Ayers* v. *Lawrence*, it is difficult to see why it should not interfere to prevent the application of the funds, raised and collected by the order of the supervisors, to the payment of any portion of the illegal obligation. Such an application of the funds would seem to be a waste thereof, and the case appears to be more clearly and directly within the plain language of the act, than the case presented in *Ayers* v. *Lawrence*. If it be claimed that it does not appear that such an application of the moneys in the hands of the collector would be a waste thereof, inasmuch as actions may, peradventure, be brought on the bonds in the federal courts, where it is understood that similar bonds are, under certain circumstances, enforced, we answer that there is no proof or finding in this case that any of the bonds have come to the hands of a *bona fide* holder; and the Court of Appeals, in *Town of Venice* v. *Woodruff et al.* (62 N. Y., 462), held that the apprehension that the federal courts may hold the law to be different from the decisions of the courts of this State, is no reason for maintaining a suit in equity to prevent any transfer of the bonds so that they might be sued in the federal courts.

In *Kilbourne* v. *St. John* (59 N. Y., 21) it was held that one showing no other right than as a tax-payer, cannot maintain an action in equity against the official custodian of the proceeds of a tax, to restrain the application thereof to the purposes for which the tax was raised.

Though the case was decided in November, 1874, it is quite manifest that the act of 1872 must have entirely escaped the attention of the judge who wrote the opinion. It is said by the appellant's counsel in this case, that the action in *Kilbourne* v. *St. John* was commenced before the act of 1872 was passed. If this is so of course the act could not affect the case. At all events it is clear that the act of 1872 was not considered by the court in the case, and the effect of that act in such cases was not determined or alluded to in the court, until the following month.

We are therefore of the opinion that under the views expressed by the majority of the Court of Appeals in the later case, the rule as to the power of a tax-payer to maintain a suit in equity to

restrain the collector from paying over the money, collected for the purpose of paying interest upon the void bonds has been changed, and that such an action may be maintained by a tax-payer under the act of 1872, and the plaintiff was entitled to a decree of some kind in the action. Probably, however, only upon the equitable terms that a release of all right to the stock of the company, which was transferred as the consideration of the town bonds, shall be procured and tendered. It is scarcely probable that the town can be permitted to hold the stock, while one of the tax-payers of the town, as such, is permitted to repudiate the transaction and restrain the payment of the bonds.

Since the decision of the action at the Special Term the legislature has interfered with the relative position of the parties, and, as we understand it, has, in a great measure, done away with the necessity of this action. By chapter 178 of the Laws of 1876, John Keech, one of the defendants in this action, the collector of the town of Orleans, who collected, and at the time of the trial had the money directed to be raised for the payment of the interest on the town bonds, as specified, was authorized and directed to pay to the supervisor of said town all the moneys remaining in his hands " which have been collected by him as such collector from the tax-payers of said town for railroad purposes." The supervisor of the town is required to receive said moneys and to give Keech, as collector, duplicate receipts therefor, one of which he is to file with the county treasurer of Jefferson county which entitles Keech to credit on the books of the treasurer for the amount specified therein.

By section 4 of the said act, it is declared that " it shall be the duty of the said supervisor of the said town of Orleans, on receipt of the said moneys so paid to him by the said John Keech, collector, as aforesaid, to safely keep the same and apply them towards the extinguishment of the next tax assessed on said town of Orleans, after the receipt of said moneys." And by the fifth section it is enacted, amongst other things, " that the supervisor of the town of Orleans, by accepting the money mentioned in the first section of this act, shall be deemed thereby to have assumed and accepted all the liabilities in regard thereto that existed against the said John Keech before the passage of this act; and any and all

remedies that might have been enforced against the said John Keech shall thereafter exist against the said supervisor, and may be enforced against him."

The complaint alleges that, at the commencement of the suit in January, 1873, the plaintiff was the supervisor of the said town of Orleans, and the court finds that he was such supervisor at the time of the trial in April, 1875. Whether he continued to be such supervisor at the time of the passage of the act of 1876 does not appear, and the court has no means of knowing. If he did, the act of 1876 contemplates that he shall assume and take upon himself the liabilities in regard to the money in question, which, at the commencement of the suit and at the time of the trial, John Keech, the collector, and one of the defendants, was subject to. Whoever may be the supervisor of said town for the year 1876, it is probable, inasmuch as the transfer of the interest and liability of John Keech has been accomplished by operation of law, that such supervisor would be a necessary party defendant. In fact, the whole object of the action seems to have been accomplished by that portion of the statute, which provides that the supervisor shall keep the money to be received from John Keech, the collector, and apply the same in extinguishment of the next tax assessed on the said town. This relief is as full as any that could be properly granted in the action. There is no longer any legitimate motive for continuing the action, unless it be to get rid of the costs, which were awarded against the plaintiff. The opinion hereinbefore expressed that the decision of the Special Term was erroneous, and that the action should have been maintained, being founded wholly on the act of 1872, and the construction given to that act by the Court of Appeals in *Ayers* v. *Lawrence,* and neither the act of 1872 nor the decision of the Court of Appeals reversing the decision of this court in *Ayers* v. *Lawrence* having been relied on or referred to on the trial at the Special Term, and probably having escaped the knowledge and attention both of the court and the counsel for the plaintiff on that occasion, the decision in this case, when made, was apparently correct as the law had been and was supposed to remain. It appears to us that the fairest disposition which we can make of the case, in view of the legislation of 1876, would be to reverse so much of the judgment

at the Special Term as adjudges that the defendants recover against the plaintiff the costs and disbursements of the action, leaving so much thereof as dismisses the complaint to stand, the result operating as a dismissal of the complaint without costs to either party.

Accordingly the order will be, decree and judgment of the Special Term modified so as to reverse and vacate so much thereof as awards the cost and disbursements in the action to the defendants, and as to the residue, decree and judgment of the Special Term affirmed.

Present — MULLIN, P. J., SMITH and TALCOTT, JJ.

Ordered accordingly.