EAGLE NEST CORPORATION, Plaintiff, *v.* CHARLES S. CARROLL et al., Defendants.

Supreme Court, Hamilton County, September 4, 1942.

Cross & Foley (*J. Theodore Cross* of counsel), for plaintiff.
George N. Ostrander for defendants.

IMRIE, J. This matter comes before the court upon motion of the defendants for judgment dismissing the complaint herein upon the ground that the complaint and each of the alleged causes of action stated therein, upon the face thereof, do not state facts sufficient to constitute a cause of action.

Plaintiff is a domestic corporation owning a substantial acreage of land in the town of Indian Lake, Hamilton county, in part on the shores of Blue Mountain lake and smaller lakes in the vicinity; a portion of the lands owned by the plaintiff are cleared and have been subject to some development for summer residence purposes for many years past with various buildings for living quarters and accessory uses constructed thereon. Premises owned by the plaintiff were assessed upon the assessment rolls for the years 1940 and 1941 at a total valuation of $124,960.

The action is brought against the five members of the town board of the town of Indian Lake, individually and as members of the town board and also as acting in the capacity of the board of water commissioners of Indian Lake Water District No. 2, and board of sewer commissioners of Indian Lake Sewer District No. 1; against Charles S. Carroll, also, as supervisor of the town of Indian Lake; against the three assessors of the town of Indian Lake, both individually and as constituting the board of assessors; against the five members of the board of education of Indian Lake Central Rural School District No. 1 of the town of Indian Lake, both individually and as constituting such board of education; and against the five members of the board of fire commissioners of Indian Lake Fire District No. 1, both individually and as such board.

The Indian Lake Central Rural School District No. 1 of the town of Indian Lake was formed about 1928 or 1929, presumably being a combination of the several school districts previously existing in that town. All of the lands of the plaintiff are included in the new central school district. Subsequently, certain special districts were organized in the town of Indian Lake, including Indian Lake Fire District No. 1, Indian Lake Sewer District No. 1 and Indian Lake Water District No. 2. These special districts of the town are centered in and about the hamlet of Indian Lake and do not include any of the lands of the plaintiff.

The complaint sets up three separately stated and alleged causes of action. In some ninety-three separate allegations in the first cause of action, the plaintiff sets forth what it believes justifies equitable relief to it as a taxpayer in the· town of Indian Lake and in the said central school district, in the enjoining and restraining of the defendants from levying, assessing or collecting certain taxes upon the lands of the plaintiff, in the declaration that the creation and establishment of the central school district was illegal, null and void; that the defendants be compelled to account to the plaintiff and make restitution to the plaintiff of all moneys improperly collected under the name of school taxes since the year 1928; that the establishment of the several stated special districts be declared illegal, null and void, and that similar accounting and restitution be made of taxes collected for such district purposes.

In and for its second cause of action the plaintiff realleges all of the previous allegations and makes further allegations as the basis of a taxpayer's action under section 51 of the General Municipal Law (Cons. Laws, ch. 24).

As and for its third cause of action the plaintiff, realleging all of the earlier allegations of the complaint, also sets forth that two proceedings in certiorari under the Tax Law have been instituted for the years 1940 and 1941 to review plaintiff's assessments in the town of Indian Lake and prays that such certiorari proceedings be consolidated with this action.

The meat and burden of the plaintiff's complaint is two-fold: (a) That the central school district was illegally created, plaintiff's lands illegally included within its boundaries and all of the taxes subsequently levied and collected were without warrant of law, confiscatory and unconstitutional; (b) That, under the guise of school taxes, through the connivance of the several defendants, individually and in their official capacities, illegally and fraudulently, for the benefit of themselves and the inci-

dental benefit of the individuals owning property in the restricted areas of the several special districts, a large proportion of the costs of these several special districts is being carried by the plaintiff although none of the plaintiff's property is within the districts and none of the benefits of such districts inures to plaintiff or its property.

Incident to these foregoing matters there are various allegations in the complaint of discriminatory assessments of the property of the plaintiff by the town assessors, to the end that the taxes paid by the plaintiff upon its property in the town of Indian Lake and the school district are unjust, discriminatory and confiscatory.

It is alleged that after the central school district was organized in 1928, a schoolhouse structure was built at the hamlet of Indian Lake at the total cost of approximately $210,000; that upon the assessment rolls of the town of Indian Lake for several years past, the property of the school district, including land and building, is valued at $175,000; that this assessment of the school district property is very much greater in relation to its original cost or true value than the assessment of all of the other properties in the vicinity and, substantially, all of the other properties included within the various special districts already referred to, which are stated to be assessed at but a small fraction of their real worth and true value; that, by virtue of such inequality of assessments, a very large proportion of the costs of the several special districts has to be paid by the school district; that these costs, thus paid by the school district, have to be raised by taxation upon all the property within the school district and that thus the plaintiff is injured. (The same thing applies, of course, to all the other properties, owned by persons and corporations other than plaintiff, situated within the school district but outside of the area and benefit of the special districts, with the result that in this respect the plaintiff is no differently situated than all other property owners within the same taxing district. If, as the plaintiff alleges, the actions of the defendants set up in the complaint constitute "an illegal and fraudulent taking of the property of the plaintiff under the duress of taxation," it is equally an illegal and fraudulent taking of the property of other property owners under the same duress.) It is pointed out in the complaint, as to the operations of the water district, that no water district tax has been assessed against the school district property but instead and in place thereof a charge called "water rent" has been made against the schoolhouse for water service there rendered which is

unmetered, whereas·substantially all of the other water service of said system has been metered and is charged according to the amount consumed; that, from the installation of the system until the year 1939, the water charge against the school was $4,000 a year, which is a sum many times in excess of the amount of water rental received from all other consumers; that during 1939 the water rent charged against the school was $3,200 out of a total water-rental charge for the district of somewhat over $6,500; that in 1940 a similar charge to the schoolhouse was $2,500 out of the total water-rental charge of slightly over $3,700. It is also alleged that the properties actually served by the water system pay approximately one-sixth of the total cost of its operation while the schoolhouse pays nearly one-half, the remaining cost apparently being paid by properties within the water district but not directly served. It is also set up that, by virtue of the alleged disproportionate assessment of the school property, fifty-five per cent of the cost of the sewer system was assessed against the school district, of which, of course, the plaintiff, as one of the taxpayers in the district, would pay its share while receiving no benefit from such system, and that there is a similar inequality in charges in the annual expense of maintaining the system.

The first matters to be determined on this motion are whether the plaintiff has any cause of action under the terms of its complaint, and, if having any, whether it can assert all of the causes of action alleged in the complaint. Plaintiff seeks remedies both in equity and at law, maintaining that the statutory establishment of the legal remedy of a taxpayer's action (General Municipal Law, § 51) did not abrogate proceedings in equity against public officials. The defendants contend that the portion of plaintiff's complaint which purports to state an equitable cause of action is insufficient; that, at least, if the plaintiff can maintain an action under section 51 of the General Municipal Law, it is limited as to the persons against whom the action may be maintained and that the members of the board of education of the central school district, the commissioners of the fire district and the members of the town board of the town of Indian Lake, insofar as their activities relate to the water and sewer districts, cannot be prosecuted under this section.

Counsel for plaintiff is correct in the statement in his memorandum, "The old rule of law before the adoption of section 51 of the General Municipal Law was that taxpayers could inter-fere with municipal acts and question them only by two means, the first by unseating the officials at the next election, and the

second by a bill in equity when the taxpayer could show damage to itself not common to all taxpayers. This old equity action has clearly survived and has not been abrogated.'' While it is true that the equity action has not been abrogated, neither has it been extended, either by practice or by statute. To remedy the situation indicated by the first part of the foregoing quotation, and by numerous decisions of the courts prior to that time, chapter 161 of the Laws of 1872 was enacted and with various changes now appears as section 51 of the General Municipal Law, providing in its terms a broad base for actions by and in behalf of taxpayers against public officers (a) to prevent any illegal official act; (b) to prevent waste or injury to any property, funds or estate of such public corporation; (c) to compel restitution of such property. Thus we have remedies which taxpayers may assert against wrongful acts of certain classes of public officers; the one a statutory remedy and the other a remedy in equity but still under the old rule that, in equity, the taxpayer must show that the acts which are attacked affect him in a manner not common to all taxpayers of the community.

The plaintiff, in its first cause of action, fails to meet the equitable requirement of showing injury to itself not common to all taxpayers; the ninety-third allegation of its complaint, alleging special and peculiar interest and injury, is merely a conclusion, and is, in fact, substantially inconsistent with the other allegations of the complaint.

It is true that the plaintiff is a large taxpayer, and that the iniquities charged on the part of the defendant officers, if iniquities they are, do put a heavy tax burden on it by virtue of the large amount of property assessed to it. But all other taxpayers of the town, or, at least, of the central school district, suffer in equal quality even though not in equal quantity. This again is set forth by the plaintiff in the eighty-seventh allegation of its complaint. The mere fact that one taxpayer pays a heavier tax than another does not constitute the measure of that taxpayer's right to relief in equity.

All the weight of established authority in this State is to the effect that at common law a taxpayer as such had no right of action against a public officer to restrain or prevent the waste of public funds or injury to public property (*Altschul* v. *Ludwig*, 216 N. Y. 459); and that a taxpayer was entitled to equitable relief against the acts of public officers only when and as he could show that the alleged delinquency in the administration of public affairs affected some individual interest peculiar to himself, distinct from that which belongs to every inhabitant of

the community. (*Doolittle* v. *Supervisors,* 18 N. Y. 155, 161–163; *Roosevelt* v. *Draper,* 23 N. Y. 318; *Kilbourne* v. *St. John,* 59 N. Y. 21; *People* v. *Ingersoll,* 58 N. Y. 1, 31; *Mooers* v. *Smedley,* 6 Johns. Ch. 28.) In the latter case Chancellor Kent said that he could not find any statute, precedent or practice, that it belonged to the jurisdiction of chancery, as a court of equity, to reverse or control the determination of the supervisors in their examination and allowances of accounts as chargeable against their county.

Thus, plaintiff's first cause of action is not sufficient and must be dismissed, for the reason that, framed in equity, it does not show that the plaintiff has such a separate, individual and peculiar interest and injury as would justify such an action; particularly now in view of the remedy provided by statute. This determination makes it unnecessary to discuss other possible legal proceedings which the plaintiff might have or could take involving the board of education of the central school district under article 78 of the Civil Practice Act or, before the commissioner of education, under section 890 of the Education Law, on the theory that, assuming the correctness of the allegations of the complaint, most of the wrongs alleged by the plaintiff would seem to be based upon either indifference or negligence, or active wrong on the part of the members of the board of supervisors in not taking steps to have the assessment of the school property commensurate with that of other properties in the special districts and also not taking steps to prevent the alleged overcharging of the school district by means of water rentals.

I do believe that the plaintiff, in its second cause of action, sets forth sufficient grounds, *prima facie,* to justify an action under section 51 of the General Municipal Law against all of the defendants. In stating who may be prosecuted under this action, the section reads, in part, "All officers, agents, commissioners and other persons acting, or who have acted, for and on behalf of any county, town, village or municipal corporation * * * may be prosecuted * * * ."

In spite of the fact that section 2 of the same law, in defining "municipal corporations," omits school districts, it is clear that a school district is such a municipal corporation that its officers come within the purview of this section. (General Corporation Law, § 3, subd. 2; Cons. Laws, ch. 23; Education Law, § 300; Cons. Laws, ch. 16; *Judd* v. *Board of Education,* 278 N. Y. 200.)

As a result of the amended section 61 of the Town Law, there are no longer any special district commissioners in towns, with the exceptions noted in that section. Such commissioners were "abolished." All their powers are now vested in and exercised by the town board of the town. Unless I have overlooked some provision of the Town Law to a contrary effect, the members of the town board are not commissioners of any district or districts. The town acts through its town board. That board, as an entity and as the statutory representative of the town itself, manages the affairs of the various special districts, whether the district includes the whole town or but a minor fraction of it. Granted, that it may be contended that some actions of the town board, in respect to such districts, are limited to the area of a particular district, still the action is that of the town board and, clearly, "on behalf of the town." Every act of the members of the town board with reference to one of the special districts is, nonetheless, an act of the town board. Instances could be multiplied innumerably where town boards act specifically in relation to matters of a purely local and vicinity interest in the township, but always as a town board and "on behalf of the town." One may sue a town and the town board for a balance due under a contract made with the board of water commissioners, where the water board was abolished by section 61. A judgment against the "town board" imposes upon it the obligation to pay the judgment and then to levy and assess against property within the water district a sum sufficient to reimburse it. (*Grishaber* v. *Town of Callicoon,* 263 App. Div. 471; *Echo Lake Corp.* v. *Town of Mt. Pleasant,* 247 App. Div. 743.) Section 61 of the Town Law substituted the town board for the district commissioners, who were abolished. It was presumably found desirable, in amending the Town Law in 1932, to centralize all these various district activities which were, after all, of and for the town, in the government of the town, and to require the town board to manage them. The members of the town board are officers of the town. I cannot see how a distinction can be made under section 51 of the General Municipal Law, with respect to taxpayer's action against these members which would differentiate their functions in managing the affairs of certain districts within a town and their other statutory acts in the management of the general affairs of the town.

The statute (General Municipal Law, § 51) is remedial and should be liberally construed for the purpose of protection of the taxpayers. (*Shiebler* v. *Griffing,* 83 Misc. Rep. 363; *Queens County Water Co.* v. *Monroe,* 83 App. Div. 105; *Hicks* v. *Eggleston,* 105 App. Div. 73.)

The history of the statute since its first enactment in 1872 has been one of general extension and liberalization. (*Altschul* v. *Ludwig, supra.*) It clearly provides that those who may be prosecuted under its terms are "officers, agents, commissioners and other persons acting, or who have acted, for and on behalf of any county, town, village or municipal corporation in this state." It is urged by the defendants, in effect, that the words "county, town, village or municipal corporation," are limiting in character and that, unless the persons against whom action is sought are officers of one of such governmental subdivisions (also read in connection with the definition in section 2 of the law), action cannot be maintained against them. In section 2 it is said, "The term 'municipal corporation,' *as used in this chapter,* includes only a county, town, city and village." (Italics supplied.) In section 29 of the same act (chapter) it is said, "The term 'municipal corporation,' *as used in this article* [Art. 2], includes a city, county, village, town, school district, sewer district, water district, lighting district or any other district or territory authorized by law to issue bonds." (Italics supplied.)

In my opinion it has been the intention of the Legislature to provide a statute for the purpose of the protection of taxpayers generally, to supply the lack of remedies at law and in equity previously pointed out by the courts; this statute is now section 51 of the General Municipal Law. It was not the intention of the Legislature in referring to those who could be prosecuted thereunder as officers, et cetera, of any "county, town, village or municipal corporation," so closely to limit the officers who could be prosecuted, as is contended for by the defendants. The variation above pointed out in the definition of a "municipal corporation" in sections 2 and 29 of the same act indicates that the expression "municipal corporation" in section 51 is not to have any rigid application or definition. If, as has been said, this statute was and is a remedial statute for the protection of taxpayers, it seems ridiculous to assume that officers of a town, as such, were subject to prosecution, but that officers of a subdivision of a town might be subject to no limiting action on the part of the taxpayers. If the defendants' contention is correct and the expression, "county, town, village or municipal corporation" must be read in connection with the definition in section 2 (which does define a municipal corporation as a county, town, city and village), why should it not have been found as easy on the part of the Legislature to say, in section 51, "any county, town, village or city?" That is clearly the effect of defendants'

interpretation. Both the plaintiff and the defendants refer to the members of the town board in certain instances as the board of water commissioners and the board of sewer commissioners. I doubt if this is a proper term. As I have already said, section 61 of the Town Law abolished the commissioners; it, therefore, abolished the boards of commissioners; as I read the statute, there is no board of water commissioners or board of sewer commissioners in the town of Indian Lake. It is the town board in each instance which is vested with the powers formerly pertaining to such boards of commissioners.

Even though this is a wrong interpretation of the statute and it may be said that the town board, when and as it acts for these districts, becomes a board of water commissioners or a board of sewer commissioners, it is, nevertheless, my opinion that, as such, they are subject to prosecution under section 51 of the General Municipal Law as falling within the classification of "officers, agents, commissioners and other persons acting, or who have acted, for and on behalf of any * * * town."

The cause of action secondly set up in plaintiff's complaint may be maintained against the members of the town board in their relationship to the water and sewer districts as well as in their relationship to the town itself. Such action may also be maintained against the members of the board of education on the grounds already stated; likewise, against the commissioners of the fire district; all as being within the purview of section 51. The acts of the board of town assessors would not normally be subject to review thereunder except as to the allegations of illegal, fraudulent and collusive acts on their part in connection with the other town officers and for that reason, on the basis of the pleading itself, I hold that a good cause of action is stated against them.

Plaintiff's third cause of action, referring to two previously instituted certiorari proceedings to review assessments of its property made by the board of town assessors, read with the remainder of the complaint, does not state a cause of action. These proceedings are exclusive in their nature, instituted under the provisions of the Tax Law, and they are of such a character as not to permit them to be joined with the third cause of action alleged in the complaint.

Defendants' motion for dismissal of the whole complaint is denied; treated as a motion as to the separate causes of action, it is granted as to the first and third alleged causes of action of the complaint; as such, it is denied as to the second cause of action. Plaintiff has leave to serve an amended complaint in

accordance with this memorandum and the following comments: Allegations 28 and 30 of the complaint, read in conjunction with allegations 22 and 23 of the complaint, constitute conclusions merely; neither these allegations nor any of the other allegations of the complaint can furnish the basis for a determination that the creation and establishment of the Indian Lake Central Rural School District No. 1 or the several special districts, in each case, was illegal, null and void, even though the creation and establishment of such several districts could be attacked or questioned collaterally in this proceeding; section 51 of the General Municipal Law cannot be used for such purpose but it has to do only with the actions of the officers sought to be prosecuted thereunder. Order may be submitted or, if desired by counsel, each may submit order for settlement; in either case, without costs to either party.