WILLIAM H. HILLS, Respondent, *v.* THE PEEKSKILL SAVINGS BANK et al., Appellants.

In an action by a tax payer of the town of A., to have certain bonds issued by said town adjudged illegal and void, it appeared that the town, acting in supposed accordance with statutory provisions (Chap. 907, Laws of 1869, as amended by chap. 925, Laws of 1871) issued its bonds to pay for stock of a railroad corporation, which passed into the hands of innocent holders. The bonds were claimed by the town to have been illegally issued, and so invalid. While suits were pending to enforce them, said town, under the act of 1880 (Chap. 146, Laws of 1880), authorizing it " to issue new bonds pursuant to the provisions of chapter 75, Laws of 1878," and its amendments, to the amount and extent of its bonded indebtedness, issued the bonds in question in exchange for, and to retire the outstanding bonds, the new bonds drawing a lower rate of interest than the old ones. Said town at the time had no other " bonded indebtedness " than the original bonds issued as above stated. *Held,* that the action was not maintainable ; that the town having elected to compromise rather than to contest the validity of the old bonds, was estopped from thereafter questioning it.

The words " bonded indebtedness," as used in said acts of 1878 and 1880, are not limited to bonds in all respects legal and valid, but the acts authorize the refunding of " all municipal bonds save such as " have been adjudged invalid by the final determination of a competent court which are excluded from their operation by chapter 317, Laws of 1878.

The act of 1878 first mentioned, as thus construed, is not violative of the constitutional provision (State Const., art. 8, § 11), prohibiting municipal corporations from incurring indebtedness for other than " county, city, town or village purposes." The said act does not authorize the incurring of an indebtedness, but the payment of an acknowledged debt, and the constitutional provision does not deprive such corporations of the right to compromise claims which they dispute.

The defect alleged in the proceedings under which the original bonds were issued was that to the averment in the petition, that " the signers were a majority of the tax payers of the town, was not added the words ' not including those taxed for dogs or highway tax only.' " *Held,* that the defect did not render the bonds so absolutely void as matter of law, but that there might be reasonable question pending an adjudication ; enough of doubt to justify the legislature in authorizing, and the town in effecting an amicable settlement.

*People, ex rel. Green,* v. *Smith* (55 N. Y. 135), *Metzger* v. *A. & A. R. R. Co.* (79 id. 171), distinguished.

(Argued January 27, 1886 ; decided March 2, 1886.)

APPEAL from judgment of the General Term of the Supreme Court in the fourth judicial department, entered upon

an order made October 19, 1883, which affirmed a judgment in favor of plaintiff, entered upon a decision of the court on trial at Special Term.

This action was brought by plaintiff as a tax payer of the town of Attica, to have certain bonds issued by said town and held by the bank, defendant, adjudged to be void, and to require the said bank to surrender up the same to be canceled, and to restrain said bank from selling or disposing of said bonds, and the defendant Farnham, supervisor of said town, from taking any proceedings to levy a tax to pay interest on said bonds.

The bonds in question were issued and delivered in exchange for, and to retire other bonds issued by said town to pay for its subscription for stock of the Attica and Arcade Railroad Company.

*L. W. Thayer & Samuel Hand* for appellant. Although the petition did not in express language state that those taxed for dogs and highway taxes only were not included, the language employed does necessarily exclude them, and it is in compliance with the ·statute in force at the time it was made. (Laws 1869, chap. 907; Laws 1871, chap. 925, § 1.) An assessment made by town commissioners for the performance of highway labor is not a tax, and no person thus assessed can be a tax payer whether he performs the labor or not. (*Sharp* v. *Spier*, 4 Hill, 82.) The legislature had the power to authorize the new bonds to be issued to pay or return the old ones, and the former were invalid. (*Williams* v. *Town of Duanesburgh*, 66 N. Y. 129; *Bk. of Rome* v. *Village of Rome*, 18 id. 38; *Duanesburgh* v. *Jenkins*, 57 id. 177; *People* v. *Mitchell*, 35 id. 551.) The plaintiff, as tax payer, cannot maintain the action against the Peekskill Savings Bank. (*Hill* v. *Peekskill Savings Bank*, 26 Hun, 164.) This action cannot be maintained by the plaintiff against either of the defendants, because before the trial the act under which it was brought, and the only law under which it could be maintained, if at all, had been absolutely repealed. (*Chegary* v. *Jenkins*, 5 N. Y. 379; *Lenhard* v. *Lynch*, 62 How. 56; *Kuller* v. *Palmer*, 1 Hill, 324; *People* v. *Livingston*, 6 Wend. 526; *Curtis* v.

*Leavitt*, 15 N. Y. 1; *Washburn* v. *Franklin*, 35 Barr. 599.) This action cannot be maintained in a court of equity against the bank defendant under any statute or authority. (*Town of Venice* v. *Woodruff* 62 N. Y. 466; *Ayers* v. *Lawrence*, 50 id. 192.) A void contract if fully performed and its benefits received, cannot be questioned by the party receiving such benefits. (*Woodruff* v. *Erie R. Co.*, 93 N. Y. 609; *Bissell* v. *M. S. & N. I. R. R. Co.*, 22 id. 258; *Whitney Arms Co.* v. *Barlow*, 63 id. 62.)

*I. Sam Johnson* for Reuben H. Farnham appellant. The plaintiff could not maintain this action against the Peekskill Savings Bank. (*Town of Mentz* v. *Cook*, 22 N. Y. Weekly Dig. 476; 3 Pom. Eq., § 1399; 2 Story Eq. Jur., § 700; 87 N. Y. 452; 81 id. 156, 474; 77 id. 542; 92 id. 465; 75 id. 397; 98 id. 222; id. 239.)

*William Nath'l Cogswell* for respondent. As the petition in this case did not show that the petitioners were a majority of the tax payers of the town, excluding those taxed for dogs and highway taxes only, the county judge acquired no jurisdiction of the proceedings. (*People* v. *Spencer*, 55 N. Y. 1; *People* v. *Hughitt*, 5 Lans. 89; *People* v. *Van Valkenburgh*, 63 Barb. 105; *People* v. *Smith*, 55 N. Y. 135.) As there was no power to create the bonds, so there was no power to ratify the same. (*Weismer* v. *Village of Douglass*, 64 N. Y. 91.) The bonds originally issued in aid of the railroad company being absolutely void, create no indebtedness against the town, and therefore there was no authority to issue the bonds now held by the Peekskill bank. The statute gives authority only to pay the bonded indebtedness by issuing new bonds. (Laws of 1878, chaps. 75, 317; Laws of 1880, chap. 146.) The town was not a necessary party. (*Ayers* v. *Lawrence*, 59 N. Y. 192; *Metzger* v. *A. & A. R. R. Co.*, 79 id. 171.) The action was well brought and has not been affected by any of the various repealing acts passed since it was commenced. (*Butler* v. *Palmer*, 1 Hill, 324, 330; *Ayers* v. *Lawrence*, 59 N. Y. 192; *Metzger* v. *A. & A. R. R. Co.*, 79 id. 179; *Osterhoudt* v. *Rigney*, 98 id. 222.) It was the intent of the legis-

lature to pass an act authorizing towns to issue valid bonds for void bonds, and thus to create a bonded indebtedness when there had been theretofore none; such an act would be utterly unconstitutional and void. (*Weismer* v. *Village of Douglass*, 64 N. Y. 91; · Const., § 11, art. 8.) The Peekskill Savings Bank was not only a proper party to the suit, but was a necessary party. It was the claimant to a part of these funds that Farnham had threatened to have raised by tax. It was necessary that it should be brought into court so that it could assert its rights and the validity of the tax. (*Osterhoudt* v. *Board of Supervisors of Ulster*, 98 N. Y. 239; *Metzger* v. *A. & A. R. R. Co.*, 79 id. 171.)

FINCH, J. The whole argument of the courts below, ending in a cancellation of the bonds in controversy, rests upon the assumption that the original bonds of the town of Attica, which served as the cause and consideration of the refunding issue, were absolutely void as matter of law, although their invalidity had never been adjudged. The argument takes no note of the fact that there might be reasonable question about that, pending an adjudication, and that enough of doubt attended the ultimate result to justify the legislature in authorizing, and the town in effecting, an amicable settlement and compromise, of which the new bonds were the fruit. There was debate and litigation over the validity of the original issue. Those bonds followed a proceeding initiated by a petition to the Supreme Court, drawn in supposed accordance with the provisions of the act of 1869 (Chap. 907), as amended by the act of 1871 (Chap. 925). That petition averred that its signers were a majority of the tax payers of the town, but did not add the explanatory clause, "not including those taxed for dogs or highway tax only." The existence of this defect, it is said, we are bound by a precedent of our own making to declare, stripped the proceeding in the Supreme Court of jurisdiction, and left it absolutely void. (*People, ex rel. Green,* v. *Smith,* 55 N. Y. 135.) That was a case in which the county judge to whom the petition had been presented, refused the application, and the appeal reached this court in the proceeding itself; and there

appears not to have been presented to the mind of the court a provision of the act of 1869, now brought to our attention, which bears strongly upon the inquiry involved. It is not necessary to say whether to that new consideration there is or is not a satisfactory answer. It is quite enough that the validity of the original bonds of the town of Attica has never been passed upon by this court, and its ultimate action was an event unsolved, when the legislature and the town chose to avoid such solution, and act without dependence upon it. It is true that the bonds of another town in the county of Wyoming came before this court (*Metzger* v. *Attica & Arcade R. R. Co.*, 79 N. Y. 171), but our determination went upon a concession not here existing, and settled only that, upon the admissions made of the invalidity of the bonds, the action was properly brought and the relief justly granted. We are referred to a suit commenced in the United States Circuit Court upon coupons of the original Attica bonds, in which the holders recovered, and the court adjudged on a motion for a new trial, largely influenced by the new consideration now pressed upon us, that the tax payers' petition was sufficient to confer jurisdiction and the bonds were valid. While that decision does not bind us, the circumstance shows that, at least, there was room for a difference of judicial opinion upon the question of the sufficiency of the petition, and that in good faith the ultimate result might be deemed uncertain, and the controversy be settled by an amicable adjustment. In 1879, an action was begun in the Federal court against the town by a holder of the original bonds which has been tried, but in which judgment has not been rendered. That action was pending while the act of 1878, which authorized municipal corporations to refund their bonded indebtedness, was in force, but since it did not cover items of accrued and unpaid interest, a special act was passed in 1880 authorizing the towns of Attica and Java "to issue new bonds pursuant to the provisions of chapter 74 of the Laws of 1878" and its amendments "to the amount and extent of the bonded indebtedness as provided in said act, including interest accrued and unpaid." The town of Attica had no "bonded indebtedness," except the original bonds whose validity is now ques-

tioned.   The defendants offered to prove that while the action
last above referred to was pending it was compromised by an
agreement to substitute the new bonds drawing a lower rate of
interest for the bonds then in suit.   This offer was refused by the
court and an exception taken.   The situation on both sides is
thus apparent.   The town of Attica, acting in supposed accord-
ance with a statutory authority, had issued its bonds which had
passed into the hands of innocent holders.   Controversy arose
as to their validity.   The holders insisted upon that validity and
brought suits to enforce them in the United States courts, and
both parties thus stood upon their precise legal rights.   Before
an adjudication and while its result was unknown and uncer-
tain, the legislature by a general act authorized municipal cor-
porations to refund their " bonded indebtedness " at lower
rates of interest, and the first question presented is the meaning
of that phrase.

    The respondents construe it to mean a legal and valid bonded
indebtedness in which there are no flaws, and which could be
enforced by the courts, and insist that where there was a defect
of jurisdiction which made the bonds void, that there was no
" bonded indebtedness " existing.   That the legislature had no
such meaning is apparent from the explanatory amendment
passed a few weeks later than the original act. (Laws of 1878,
chap. 317.)   That was intended to make clear and certain the
construction intended.   It declared " this act shall *not* be so
*construed* as to authorize the issue of new bonds to supersede
or pay existing bonds which *have been adjudged invalid* by
the final determination of a competent court."   The enactment
was superfluous and an absurdity upon the theory of the re-
spondent.   If the original act meant by " bonded indebtedness "
only that which was impregnable against assault in the courts,
the explanatory act was not only useless, but worse than that,
for, under pretense of explanation, it made what was clear be-
fore, at once ambiguous and uncertain ; since the exclusion of
bonds *adjudged* to be void, inevitably draws with it the infer-
ence that all other bonds issued in behalf of a town were in-
cluded in the act, whether, in fact, legal and valid or not.   Not
only that, but the construction here asserted involves the leg-

islature in a measure either utterly absurd and ineffective, or becoming operative and having force only through a planned and meditated deception. If the enactment had said in plain words that municipal bonds in all respects valid and legal, and those only, may be refunded at lower rates of interest, none would have been refunded. The holders of town bonds drawing seven per cent interest would have no motive to exchange them for bonds drawing a lower rate, if the latter involved every opportunity for defense which existed against the former. Investors would shun them for precisely the same reason, and, if willing to face all possible legal questions, would prefer to buy the old bonds with the higher rate of interest. The legislature did not say that. It used a plain and unambiguous form of expression, naturally meaning that all existing municipal bonds might be refunded, save only those which had been adjudged invalid. In using that language, it invited an exchange by holders of old bonds and investments by those having capital to employ, on a basis of safety which made the new issue independent of defects in the old; and if it did not mean that, it simply so phrased the law as to make it hold out a deceptive and fraudulent lure ; effective only upon condition that its real meaning should be deftly concealed. And what also shall we say of the further enactment relating specifically to the town of Attica? That town had no bonded indebtedness at all if the respondent's contention be sound, and the legislature passed not only an idle and superfluous act, but one whose direct tendency would be to mislead and deceive. We have not the least doubt of the meaning and intent of the statute. Three kinds or descriptions of " bonded indebtedness," properly so called, existed when the laws of 1878 were passed. There were, perhaps, municipal bonds as to which no question had ever been raised, and probably secure against legal assault ; bonds which had been questioned, and occasionally even resisted, and which might or might not prove valid, according as one court or another should conclude; and bonds which by some competent court had been adjudged invalid. The first two classes were covered and intended to be covered by the terms of the Funding Act, and the last only was excluded. This construction

fully protects every right of the municipal corporations affected by the act. It takes from them no privilege of resistance to unauthorized proceedings; it leaves them to determine whether they will stand upon the law and take its award at the end; or whether, doubtful of the legal result, and unwilling to face its peril, or impressed with the justice and wisdom of preserving untainted the municipal credit, they will avail themselves of the statutory provision, and by a convenient compromise, lessen the interest burden, and perhaps extend the period of credit. They cannot do both. The statute never contemplated both a compromise and a fight. No town could accept the provision without a consequent admission involved in the acceptance, that the old bonds were valid, for the new are permitted to be issued only to pay the old; and the fact of their issue by the town, admits that liability when it provides for it. It was to this class of cases especially that the statute could have its intended and effective operation. Undisputed bonds, drawing high rates of interest, and having long time to run, would be held firmly, since no possible motive could exist for their surrender. As to these, the statute would be ineffective until their maturity. But bonds questioned, and over whose ultimate validity there hung a doubt, would be readily surrendered in a way of compromise under the statutory permission. To hold with the respondent would violate the language of the enactment, and its natural and obvious intent, and pervert it from a purpose of peace and justice to one of litigation and artifice.

The further objection that the act of 1878 is unconstitutional upon the construction thus adopted, because it authorizes municipalities to "incur" an indebtedness for something other than "county, city, town or village purposes" (Art. 8, § 11), is answered by adding that the act did not authorize the incurring of an indebtedness, but the payment of an acknowledged debt. The Constitution does not deprive municipalities of the right to compromise a claim which they dispute, but which in the end they deem it wise and prudent to acknowledge in part and pay as acknowledged; and which might, by judicial decis-

ion, but for the compromise, become a charge upon them to its full extent.

·The judgment should be reversed and a new trial granted, costs to abide the event.

All concur.

Judgment reversed.