GRIFFIN v. CITY OF GLOVERSVILLE.

(Supreme Court, Appellate Division, Third Department. December 31, 1901.)

1. MUNICIPAL ORDINANCES—LEGISLATIVE AUTHORITY—SUBSEQUENT LEGISLATIVE APPROVAL.
      An ordinance or by-law enacted by a municipal corporation in pursuance of legislative authority, which is expressly recognized and approved by a subsequent legislative enactment, has the force and effect of a state statute.

2. SAME—VOID ORDINANCE—ACTIONS UNDER.
      Gloversville city ordinances, enacted pursuant to Laws 1890, c. 55, constituting the city charter, established the boundaries of fire limits, prohibited the erection of wooden structures within such boundaries, provided for the granting of permits to repair buildings therein, declared buildings erected contrary to such ordinances nuisances to be abated, and provided for changing or suspending such ordinances either by unanimous consent or upon the adoption of such proposal after two weeks' consideration. Laws 1899, c. 275, revising the municipal charter, recognized the established fire limits and the ordinances relative thereto. An ordinance granting permission to a person to remove a wooden building from one part of the fire limits to another was enacted in a manner contrary to the rule governing the suspension of the ordinances relating to fire protection. Held, that the permission was of no effect.

3. SAME—PERMISSION TO REPAIR—REMOVAL.
      A resolution of a city council permitting a person to repair a wooden building within the fire limits does not authorize the removal of the building to another place within the limits, where the ordinance relating to fire limits prohibits the "erection or placing" of wooden buildings within the fire district.

4. NUISANCE—SPECIFIC STATUTORY DECLARATION—JUDICIAL DETERMINATION.
      A declaration of a city ordinance that a particular thing is a common nuisance does not make it so, but the question of its being a common nuisance is for judicial determination.

5. SAME—LEGISLATIVE DETERMINATION—POLICE POWER.
      Where ordinances of a municipality, enacted within its police powers and under legislative authority, establish fire limits, prohibit the erec-

tion of wooden structures therein, and declare the erection of such structures within the limits to be public nuisances, structures coming within the class described are in fact nuisances without judicial determination; and hence the officers of the municipality are authorized to destroy a structure which is within the designated class without showing that it was in fact a nuisance.

Houghton, J., dissenting.

Appeal from trial term, Fulton county.

Action by Mary A. Griffin against the city of Gloversville. From a judgment for plaintiff, defendant appeals. Reversed.

The plaintiff is the owner of premises in the city of Gloversville, N. Y., known as 95, 97, and 99 West Fulton street, extending back more than 150 feet to the Cayadutta creek. The city of Gloversville is a municipal corporation, and the premises of the plaintiff are all within the boundaries of the fire limits of said city. In 1899, and for some years prior thereto, there was a wooden frame building on the rear of No. 99 West Fulton street, which had been used as a beam shop, and which the plaintiff used as a stable for a horse and as a storehouse. The building was about 24x28 feet in size, 1½ stories high, and had a pointed shingle roof. The front of the old building was from 18 to 20 feet back from the rear of the building on the front of No. 99 West Fulton street. It was old, and the materials were decayed. On the 28th day of March, 1899, the plaintiff presented a petition to the common council asking permission to repair and build an addition of 12 feet to her storehouse, which petition was granted. Nothing under the permit was done by the plaintiff until April, 1900. The plaintiff then commenced work on the old building, materially changing the entire plan of construction. The building was raised from 1½ to 2 stories in height, and changed from a pointed shingle roof to a flat tin roof. The roof and the timbers supporting the roof were new. The building was taken down and put up in sections, using new and old timbers and boards. Every part of the building was thus taken down except certain beams upstairs, which remained as before. At the time these changes were made plaintiff had masons putting in a new foundation for this building at the end of her lot next to the Cayadutta creek. By reason of the trial court excluding proof of the action of the common council at that time, the record does not disclose what occurred thereafter until August 6, 1900. On the last-named day a resolution was offered at a meeting of the common council providing that if the plaintiff would put iron or steel siding on her building she might remove the same to the new location on her lot for which foundations were laid, and finish the same for use. This resolution was laid over for one week, and at the meeting August 13th one of the aldermen stated that the matter had been dropped, but subsequently, and on the 27th day of August, 1900, at a meeting of the common council, that resolution was again brought up for discussion and adopted. The mayor of the city notified the plaintiff that the common council did not have any authority to pass the resolution consenting to the removal of the remodeled building, and that said removal would be in violation of the charter and ordinances, but the plaintiff proceeded on the 28th of August to remove the building to the new foundation, and when the same was substantially upon the new foundation the defendant, by its superintendent of streets, went upon the premises, and took the building down. The plaintiff then brought this action, and at the close of the trial the plaintiff and defendant each asked the court to direct the jury to find a verdict in his favor. The court directed the jury to find a verdict in favor of the plaintiff for $320, and in doing so used this language: "I think you have failed to establish any defense. If the legislature has the power to declare property of this kind, or a building erected in this manner, a nuisance, it has not the right to delegate that power to a municipality. When a municipality is seeking to have this declared a nuisance, it must rely upon the fact that it is a public nuisance, that it is such a structure as is dangerous to health or comfort. I cannot say that a building of this kind is such because a wooden building

686     73 NEW YORK SUPPLEMENT    (Sup. Ct.

and 107 New York State Reporter

has been there for twenty-one years, and it has existed and the community has existed, and the simple fact of the construction of another building of that kind cannot make it a public nuisance. If one building was a nuisance, the other was; so it cannot be said that this alteration constituted a public nuisance. It may have been an illegal structure. If it was to be removed, it should have been removed after some- judicial declaration that it was illegal. There is no authority anywhere for the common council or the mayor to remove a structure simply because it is illegal."

Argued before PARKER, P. J., and SMITH, EDWARDS,. CHASE, and HOUGHTON, JJ.

James H. Drury and Frank Talbot, for appellant.
H. D. Wright, for respondent.

CHASE, J. The city of Gloversville was incorporated by chapter 55 of the Laws of 1890, and, pursuant to said charter, ordinances and by-laws were duly made and established, by which the boundaries of what is known as the "fire limits" of said city were specified, and it was also therein provided:

"That within that part of said city bounded by the aforesaid limits there shall not be erected or placed any building of wood, or of wood with brick or metal veneer, and all buildings erected within said limits shall be made or constructed of stone, brick or metal with partition wall of like material and with fire proof roofs and all cornices and eaves troughs thereon shall be of brick, stone or metal." ":That within that part of said city bounded by the aforesaid limits, there shall not be made to any building any repairs or addition of wood or of wood with brick or metal veneer, except upon permission granted by resolution of the common council as provided in and by section 5 of title viii. of the city charter."

It is also therein provided that a violation of such ordinances and by-laws shall subject the offender to a fine of $25 for each offense,. and the further sum of $25 for each and every week any building or structure erected, placed, or repaired in violation thereof shall be continued. And said ordinances and by-laws further provided that:

"Every building or other structure erected contrary to the provisions of this by-law is hereby declared to be a common nuisance and shall be abated and removed as such."

By chapter 275 of the Laws of 1899 an act was passed revising the charter of the city of Gloversville. Section 148 of said act provides:

"The fire limits as now established in the city of Gloversville and the provisions regulating the erection of buildings within such limits shall remain in force under this act subject to the power of the common council to alter, enlarge, or repeal the same, and the said common council for the purpose of guarding against calamities by fire shall have and hereby are vested with the power to prescribe from time to time by ordinance the limits in said city within which either wooden buildings or buildings constructed of wood with brick or metal veneer shall not be erected, placed, or repaired without the permission granted by resolution of the common council, and to prohibit and prevent the erection, placing or repairing of any such building or structure therein."

Section 149 of said act provides:

"Every building or other structure erected contrary to the provisions of the last section or to an ordinance made by the common council in pursuance thereof is hereby declared to be a common nuisance and may be abated. and removed as such."

The ordinances and by-laws above quoted are expressly recognized by such revised charter, and, having been made and enacted pursuant to express provisions of said original charter, and so recognized and approved by the revised charter of the city of Gloversville, had and have the same force and effect as an act of the legislature. Village of Carthage v. Frederick, 122 N. Y. 268, 25 N. E. 480, 10 L. R. A. 178, 19 Am. St. Rep. 490; City of Buffalo v. New York, L. E. & W. R. Co., 152 N. Y. 276, 46 N. E. 496. The ordinances and by-laws quoted were specifically authorized, and do not depend upon general or implied authority. The said ordinances and by-laws also provide:

"These by-laws being intended to form permanent regulations are not subject to be abrogated, changed or suspended without the unanimous consent of the common council present at a meeting unless the proposed alteration has been presented and held under consideration by a resolution of the common council at least two weeks before the final vote be taken thereon."

There is no claim that the said ordinances and by-laws were ever legally abrogated, changed, or suspended. The permission given by the common council to the plaintiff to remove said building to the new location if iron or steel siding was put on said building was in direct opposition to an ordinance and by-law binding upon the common council as well as the plaintiff. Such permission, therefore, was nugatory, and did not authorize the plaintiff to do any act condemned by such ordinance and by-law. The common council had authority to give the plaintiff permission to repair and build an addition of 12 feet to the storehouse as granted by them March 28, 1899. Were plaintiff's acts within such permission? It may be assumed that for the purpose of upholding this judgment we should assume that the trial court has found that everything done by the plaintiff was included in the term "repair." Such finding, however, if made, would, in our judgment, be against the weight of evidence. It is unnecessary here to determine whether the changes made in the old building apart from its removal could be fairly included in the terms of the permission given, but, taking such changes in connection with the fact that the entire structure was removed to a new foundation some distance away, it could not be upheld without substantially nullifying the good to be effectuated by the statute and ordinances. If the plaintiff could move the building to a new foundation 60 or 70 feet away, what could prevent its removal at any time to any other part of the fire district? The ordinance and by-law is not alone directed against the erection of a wood, or wood with brick or metal veneer, building within the fire district, but against the placing of such building in such district. Apart from what had been done to the building in April, the act of August 28th alone was within the prohibition. Wadleigh v. Gilman, 12 Me. 403, 28 Am. Dec. 188.

The plaintiff claims, and the trial court held, that the defendant did not establish a defense to the action by reason of the fact that it did not show that the building was a common nuisance. It has been repeatedly held that where a particular thing is declared to be a common nuisance by statute, ordinance, or by the resolution of a

subordinate body, the correctness of such conclusion can be assailed in any action relating thereto. In such case the mere fact that such particular thing is declared a common nuisance does not make it so, and if a public official or any one attempts by summary means to abate the alleged nuisance he does so at the peril of being liable for damages if he fails to establish his contention, if the owner calls him to account for the destruction of his property. Where the legislature or a municipality duly authorized enacts a general statute or ordinance prohibiting certain erections within a prescribed territory, and declaring an erection in violation of such statute or ordinance a public nuisance, the reasonableness of the prohibition is not thereafter open to question.. The question here considered has been fully discussed in the court of appeals in Fire Department of New York v. Gilmour, 149 N. Y. 453, 44 N. E. 177, 52 Am. St. Rep. 748, in which case the court say:

"There can be no doubt of the power of the legislature to enact regulations for the protection of cities or villages against the serious danger of conflagrations. It is one of the subjects to which the police power of the state extends, and there is no one in the wide range of this power upon which the legislature has more frequently acted. It may directly enact a code of regulations applicable to exposed localities, or, as is more commonly done, it may invest municipalities with the power to pass ordinances regulating the subject. The authority given in most charters of municipalities to the legislative body to fix fire limits, to prohibit the erection of buildings therein of wood or other combustible materials, the storing of gunpowder or other explosive compounds in quantities and under circumstances hazardous to life and property, are among the familiar instances of delegated power. Regulations on this subject are restrictions of personal freedom and the free use of property. But they are justified by public necessity, and so are within the acknowledged power of the legislature. * * * It would have been competent for the legislature to have enacted a general regulation prohibiting the piling of boxes or masses of combustible material in yards or open spaces in the populous and defined districts within a city, and such an enactment every citizen would be bound to obey, and where sued for a penalty it would be no defense to a party who had violated the law to show that in his particular case, owing to exceptional circumstances, the regulation was unnecessary or unreasonable. The will of the legislature would stand as the reason for the rule, and, being general, no one, however situated, could escape its obligation, unless, indeed, he could establish that, passing beyond the police power, it involved some right of person or property protected by the constitution. In other words, where the legislature, in the exercise of the police power, enacts a regulation defining the duty of citizens either in respect to their personal conduct or the use of their property, the reasonableness of the thing enjoined or prohibited is not an open question, because the supreme legislative power has determined it by enacting the rule. See Dill. Mun. Corp. § 328, and cases cited."

In the case now before us the acts of the defendant were done pursuant to a general statute and ordinance, and to prevent the plaintiff from openly defying the executive authorities of the. city. We have not overlooked the case of Gunning System v. City of Buffalo, 62 App. Div. 497, 71 N. Y. Supp. 155, and, so far as the opinion therein expressed is contrary to the opinion herein, such opinion is disapproved.

Certain rulings were made at the trial excluding evidence offered on behalf of the defendant, but the conclusion at which we have arrived makes it unnecessary at this time to examine such rulings.

Judgment reversed, and new trial granted; costs to the appellant to abide the event. All concur, except HOUGHTON, J., who dissents.