ABRAHAM H. ALTSCHUL, Respondent, *v.* ALFRED LUDWIG, as Superintendent of Buildings of the Borough of Manhattan, City of New York, et al., Appellants.

Injunction — when taxpayer may maintain action for injunction restraining municipal officers from permitting erection and remodeling of theatre in violation of building laws — New York (city of) — board of examiners of plans for buildings — when board exceeds its powers its acts are void.

1. The mere illegality of an official act in and of itself does not justify injunctive relief in the actions authorized to be brought by a taxpayer under section 51 of chapter 24, Consolidated Laws, but when waste or injury is not involved, it must appear that in addition to being an illegal official act the threatened act is such as to imperil the public interests or calculated to work public injury or produce some public mischief.

2. Under that statute an action may be maintained by a taxpayer of the city of New York to restrain the superintendent of buildings from approving the plans for, and permitting, the erection or remodeling of a theatre in that city where such plans do not comply with the provisions of the Building Code. The erection of a theatre in violation of such provisions is a public nuisance which could be restrained by the public authorities, and as the granting of a permit to erect such a building is also an illegal official act, it may be restrained in a taxpayer's action.

3. Although the Greater New York charter (L. 1901, ch. 466, § 411) authorizes owners of buildings or structures to appeal from decisions of the superintendent of buildings refusing to approve plans for buildings and provides that "such decisions shall be final," this means that the decision of the board when acting within its limited statutory authority shall be final. This statute does not confer upon the board the right to approve a form of construction not sanctioned by the provisions of the Building Code, and neither the superintendent of buildings nor the board can lawfully act in violation of such provisions. When the board acts beyond its powers its acts are void, and the statute furnishes no justification for withholding injunctive relief if the case is in other respects such as to entitle the plaintiff to the relief sought.

*Altschul* v. *Ludwig,* 170 App. Div. —, affirmed.

(Argued November 18, 1915; decided January 4, 1916.)

APPEAL, by permission, from an order of theAppellate Division of the Supreme Court in the first judicial department, entered October 15, 1915, which reversed an order of Special Term denying a motion for an injunction *pendente lite* to restrain the superintendent of buildings from approving plans for alteration of a theatre.

The facts, so far as material, and the questions certified are stated in the opinion.

*Lamar Hardy, Corporation Counsel (Terence Farley* and *William J. Millard* of counsel), for appellants. The board of examiners in reversing the decision of the superintendent of buildings, clearly acted within its jurisdiction. Its determination, therefore, in no sense of the word, can be considered an illegal official act. (L. 1901, ch. 466, §§ 406, 407, 410, 411.) When a statute of this state prescribes that the determination of a given board is final, it is extremely doubtful whether the courts have any jurisdiction to review it. (*Kittinger* v. *Buffalo Traction Co.,* 160 N. Y. 377; *Barhite* v. *Home Tel. Co.,* 50 App. Div. 25; *Holtz* v. *Diehl,* 26 Misc. Rep. 224; *McCutcheon* v. *Terminal Station Commission,* 88 Misc. Rep. 148; *Hearst* v. *McClellan,* 102 App. Div. 342.) Even if the decision of the board of examiners in overruling the determination of the superintendent of buildings does constitute an illegal official act, it will not be enjoined in a taxpayer's action unless such act necessarily involves a waste or injury to the property, funds or estate of the city. (*Fire Dept.* v. *Atlas S. S. Co.,* 106 N. Y. 566; *Rodgers* v. *O'Brien,* 153 N. Y. 357; *Matter of Reynolds,* 202 N. Y. 430; *Slavin* v. *McGuire,* 205 N. Y. 84; *Ziegler* v. *Chapin,* 126 N. Y. 342; Thompson on Taxpayers' Actions, 4.)

*Charles H. Strong* for respondent. The answer to the first question should be in the affirmative. At the suit

of a taxpayer, the court may restrain an agent or servant of a municipality who is about to disregard provisions of the Building Law, designed to protect the people from the hazard of death by fire in a theatre. (L. 1901, ch. 466, § 411; *Peck* v. *Belknap,* 130 N.Y. 394; *Ayers* v. *Lawrence,* 59 N. Y. 192; Thompson on Taxpayers' Actions, 12–16; *Gerlach* v. *Brandreth,* 34 App. Div. 197; *Starin* v. *Edson,* 42 Hun, 549; 112 N. Y. 206; *Kingsley* v. *Bowman,* 33 App. Div. 1; *Southern Leasing Co.* v. *Ludwig,* 168 App. Div. 233; *Wey* v. *O'Hara,* 48 Misc. Rep. 84; *Parfitt* v. *Ferguson,* 159 N. Y. 111; *Bush* v. *O'Brien,* 164 N. Y. 205; *Bush* v. *Coler,* 60 App. Div. 56; 170 N. Y. 587.) The second question should be answered in the negative. The building superintendent must obey the board of examiners when said board has acted within the law, but not when it has acted in violation of law. The action of said board is final only when it acts within the law. (*People ex rel. Purdy* v. *Estabrook,* 26 Hun, 401; *N. Y. Fire Dept.* v. *Atlas Co.,* 106 N. Y. 566; *People ex rel. Tucker* v. *D'Oench,* 44 Hun, 33.)

SEABURY, J. The plaintiff, a taxpayer, brings this action against the superintendent of buildings of the borough of Manhattan, city of New York, for an injunction restraining him from approving certain plans and issuing a permit for the alteration and reconstruction of a building known as the Dewey Theatre in East Fourteenth street, in the borough of Manhattan. The owner and tenant of this property are parties to this action.

The building in question is a three-story non-fireproof building at present occupied as a theatre. As reconstructed the building is designed to have a seating capacity of 1,184. The proposed reconstruction was held by the superintendent of buildings to be so general as to constitute the construction of a new theatre, to which the requirements of article 25 of the Building Code were applicable. It is not necessary to specify in detail the respects

in which the superintendent of buildings and the court
below held the proposed construction to be contrary to the
requirements of this article of the Building Code. It is
sufficient to point out that the respects in which it was
found deficient related to the non-fireproof construction
of certain portions of it, to the absence of proper side
courts and of sufficient space behind the last row of seats
in the orchestra and balcony floors, the failure of the side
aisles to comply with the Building Code and the fact that
it is proposed to occupy in conjunction with the pro-
posed theatre a non-fireproof building having inadequate
exit facilities. It was upon these grounds and others that
the superintendent of buildings withheld his approval of
the proposed plans. An appeal was taken from the deci-
sion of the superintendent of buildings to the board of
examiners, which overruled the action of the superintend-
ent of buildings in disapproving the said plans and
approved the plans subject to compliance with certain
specified conditions. The superintendent of buildings
being notified of the action of the board of examiners,
announced his intention of approving the proposed plans
as modified by the board of examiners. It was under
these circumstances that the plaintiff applied to the Spe-
cial Term for an injunction. This application was denied,
but upon appeal to the Appellate Division the order of the
Special Term was reversed and the motion for an injunc-
tion granted. The Appellate Division wrote no opinion,
but granted the motion on the authority of *Brill* v. *Mil-
ler* (140 App. Div. 602).

Whether the facts set forth in the affidavits submitted
justified the granting of the injunction by the Appellate
Division is not now before us for review. Our review is
limited to a determination of the questions certified to us
by the Appellate Division. These questions are as follows:

" 1. Can an action be maintained by a taxpayer to
restrain the superintendent of buildings from approving
plans for the erection or remodeling of a theatre in the

city of New York, on the ground that the plans do not comply with the Building Law ?

2. Is the decision of the board of examiners, appointed pursuant to section 411 of the charter of the city of New York, on an appeal by property owners from the refusal of the superintendent of buildings to approve building plans submitted to him, final and conclusive, so that the superintendent of buildings is bound to approve the building plans as recommended by the board of examiners, to whom such an appeal is taken, even if the plans approved by the board of examiners do not comply with the Building Law ?"

These questions assume that the building plans for the erection or remodeling of the theatre in question do not comply with the Building Code of the city of New York. It does not appear that the act sought to be restrained would if performed result in waste or injury to the funds or estate of the municipality. If the action can be maintained it must be because the act that is threatened is an illegal official act and because of the nature of the act itself. Under our law as it stands at present a taxpayer's action can only be brought for the causes specified in section 1925 of the Code of Civil Procedure and section 51 of the General Municipal Law. Under section 1925 of the Code of Civil Procedure a taxpayer may maintain an action "preventing waste of or injury to, the estate, funds, or other property" of a public corporation.

Under section 51 of the General Municipal Law (Cons. Laws, ch. 24) a taxpayer may maintain an action against "all officers, agents, commissioners and other persons acting, or who have acted, for or on behalf of" any public corporation. Such an action may be maintained for any of the following purposes:

1. To prevent any illegal official act.

2. To prevent waste or injury to any property, funds or estate of such public corporation, and

3. To compel restitution of such property.

At common law a taxpayer as such has no right of action against a public officer to restrain or prevent the waste of public funds or injury to public property, or to restrain a threatened illegal official act. In England the attorney-general, in right of the prerogative of the Crown, could sue in equity to enjoin the execution of a trust of property by public corporations or the governors thereof. The taxpayer, however, had no right to demand, either at law or equity, the vindication of the public right unless the violation of that right affected him injuriously in some peculiar manner in which other members of the community were not equally affected. In the case of *Mooers* v. *Smedley* (6 Johns. Ch. 28, 31), which early arose in this state, the court declined jurisdiction of a taxpayer's action, the chancellor saying: " I cannot find, by any statute, or precedent, or practice, that it belongs to the jurisdiction of Chancery, as a Court of Equity, to review or control the determination of the supervisors, in their examination and allowance of accounts as chargeable against their county, or any of its towns, and in causing the money so allowed to be raised and levied." The principle here asserted has been often reiterated and applied. (*Doolittle* v. *Supervisors of Broome Co.*, 18 N. Y. 155; *Roosevelt* v. *Draper*, 23 N. Y. 318, 323; *People* v. *Ingersoll*, 58 N. Y. 1; *Kilbourne* v. *St. John*, 59 N. Y. 21; *Guest* v. *City of Brooklyn*, 69 N. Y. 506.)

The legislature recognized that this condition of the law was inadequate to protect the public rights where public officials who were charged with the enforcement of the law were themselves guilty of waste or injury to public funds or property or illegal official acts. The need for legislation upon this subject was made very apparent in the litigation growing out of the frauds of Tweed and his associates in the city and county of New York. (*People* v. *Ingersoll*, *supra*.)

The purpose of the statutes authorizing a taxpayer's action is not to confer upon the taxpayer the power to

bring actions which the public authorities have no power to bring, but these statutes are designed to confer upon the taxpayer the right to bring such an action in the cases specified in the statute which are cases where the relief sought could be obtained by appropriate proceedings on the part of public officers.

The first statute adopted upon this subject was the act of 1872 (Ch. 161). It was entitled "An act for the protection of taxpayers against the frauds, embezzlements and wrongful acts of public officers and agents." It authorized a taxpayer to maintain an action "to prevent waste or injury to any property, funds or estate" of public corporations. The constitutionality of this act was upheld in *People* v. *Tweed* (63 N. Y. 202, 207). This statute was amended by chapter 526 of the Laws of 1879.

The original act of 1872 (Ch. 161) was repealed by chapter 245, section 1, subdivision 48, of the Laws of 1880, but chapter 526 of the Laws of 1879 was not repealed by that act but was amended by chapter 435 of the Laws of 1880. This amendatory statute amplified these provisions of the law so as to include the auditing of "fraudulent, illegal, unjust or inequitable claims." This act of 1880 (Ch. 435) was itself repealed by chapter 531 of the Laws of 1881 but not until after the substance of it had been embodied in section 1925 of the Code of Civil Procedure. The embodiment of the substance of these statutes in section 1925 of the Code of Civil Procedure removed any doubt as to the legislature's intent to continue these provisions of law that otherwise might have arisen from their frequent amendment and repeal. (See note to section 1925 in Throop's Code of Civil Procedure [1880] and *Hills* v. *Peekskill Savings Bank*, 26 Hun, 161, 164; reversed, 101 N. Y. 490.)

If the relief which the plaintiff seeks in this action depended solely upon the provisions of section 1925 of the Code of Civil Procedure the plaintiff could not succeed because the threatened act which is here sought to be

30

restrained in no way involves the prevention of waste or injury to the estate of the city of New York. If, therefore, the plaintiff can succeed it must be by virtue of the provisions of section 51 of the General Municipal Law which authorize the maintenance of a taxpayer's action to prevent an "illegal official act."

The statute of 1881 (Ch. 531) was entitled "An act for the protection of taxpayers." This act authorized the maintenance of a taxpayer's action not only to "prevent the waste or injury" of the property of a public corporation, but "to prevent any illegal official act." This latter act was amended by chapter 673 of the Laws of 1887 and again by chapter 301 of the Laws of 1892, but both of these amendatory statutes retained the provision which authorized a taxpayer's action "to prevent any illegal official act" and the act of 1892 (Ch. 301) is in the same form in which this statute is now expressed in section 51 of the General Municipal Law.

The decision of this court in *Rogers* v. *O'Brien* (153 N. Y. 357, 361) made it clear that the purpose of the statute to which we have referred was not to draw into the preventive jurisdiction of equity at the instance of any taxpayer "any proposed illegal official act, irrespective of the fact whether the act sought to be restrained involves a waste of public property or a violation of public rights, or any injury to the interests of the taxpayer as such." In the opinion of Chief Judge ANDREWS in that case it is said that the words "to prevent any illegal official act, interpreted by the history of the new legislation commencing in 1872, in connection with the clauses with which these words are associated, plainly relate to acts germane to the purpose of the new legislation, which was to extend the remedy for the protection of taxpayers against frauds and peculations of public officials and to prevent usurpation by public bodies or agents, of powers not granted, the exercise of which may imperil the public interests."

Referring to the words of that act of 1892 which is now section 51 of the General Municipal Law, Chief Judge ANDREWS said that these words referred to cases of the character he had specified " and permit the remedy by injunction to be invoked by a taxpayer, which before was available to the attorney-general or some body or officer acting on behalf of the public." The mere illegality of the official act in and of itself does not justify injunctive relief at the request of the taxpayer. To be entitled to this relief, when waste or injury is not involved, it must appear that in addition to being an illegal official act the threatened act is such as to imperil the public interests or calculated to work public injury or produce some public mischief. (*Rogers* v. *O'Brien, supra; Warrin* v. *Baldwin*, 105 N. Y. 534; *Ziegler* v. *Chapin*, 126 N. Y. 342; *Peck* v. *Belknap*, 130 N. Y. 394; *Talcott* v. *City of Buffalo*, 125 N. Y. 280.)

The answer to the question whether this action can be maintained must depend upon whether the threatened act is in violation of public rights or would imperil the public interests or be calculated to work a public injury. The Appellate Division have determined that the plans of the proposed theatre violate those provisions of the Building Code which are designed to promote public safety and reduce the risk of injury from fire. It is manifest that the violation of the safeguards that these provisions of the Building Code prescribe imperils the public interests and is calculated to produce public injury. Theatres are places of public resort and the public have a right to the enforcement in relation to such places of those laws which the proper authorities have prescribed with a view to preventing those dreadful tragedies resulting from fire which experience has shown result from the improper construction of such places. It has already been pointed out that an action may be maintained by a taxpayer to restrain an illegal official act which is of such a character that it could be restrained upon the application of the attorney-general

or some body or officer acting on behalf of the public. (*Rogers* v. *O'Brien, supra.*) By section 652 of the Building Code the superintendent of buildings is authorized, through the corporation counsel, to institute any appropriate action to restrain the erection or alteration of a building which is not constructed or altered in accordance with the provisions of that Code. Where a public nuisance exists the attorney-general or public authorities may institute suit for its abatement, or when acts constituting such a nuisance are threatened, they may have them restrained by injunction. (*People* v. *Vanderbilt,* 26 N. Y. 287, 293.) A theatre in which a large number of persons assemble, which is built in violation of those provisions of the Building Code which are designed to secure the safety of the public and protection against fire, is a public nuisance. (*Griffin* v. *City of Gloversville,* 67 App. Div. 403; *Fire Department of New York* v. *Gilmour,* 149 N. Y. 453, 457; *Health Department* v. *Dassori,* 21 App. Div. 348; *People* v. *Wing,* 147 Cal. 382; *Kaufman* v. *Stein,* 138 Ind. 49.)

It has been held by this court that where a statute authorizing an elevated railroad company to build a station provided the stairs and station shall be built of iron, except certain specified portions thereof, the erection of a station of wood constituted a public nuisance. (*Porth* v. *Manhattan Ry. Co.,* 11 N. Y. Supp. 633; affd., 134 N. Y. 615.)

The erection of a theatre, in violation of those provisions of the Building Code which were designed to secure the safety of the public and to afford protection from fire, is a public nuisance, which could be restrained by the public authorities, and as the granting of a permit to erect such a building is also an illegal official act, it may be restrained in a taxpayer's action. It follows that the first question certified to us should be answered in the affirmative.

The second question certified to us relates to whether

the decision of the board of examiners is final and conclusive. The board of examiners are a local statutory board. Its constitution and powers are defined in section 411 of the Greater New York charter. So much of that section as it is necessary now to consider provides as follows:

" Whenever a superintendent of buildings to whom such question has been submitted, shall reject or refuse to approve the mode, manner of construction or materials proposed to be followed or used in the erection or alteration of any such building or structure, or when it is claimed that the rules and regulations of the president of the borough or the provisions of law or of said ordinances do not apply, or that an equally good and more desirable form of construction can be employed in any specific case, the owner of such building or structure, or his duly authorized agent, may appeal from the decision of such superintendent where the amount involved by such decision shall exceed the sum of one thousand dollars. * * * The decision of the board of examiners, upon such appeal, shall be rendered without unnecessary delay, and such decision shall be final."

This statute defines the powers conferred upon the board of examiners and prescribes limitations upon these powers. The board have no authority outside of and beyond the statute. The Building Code of the city of New York has the force and effect of a statute, and the provisions of section 411 of the Greater New York charter are to be construed in connection with the provisions of the Building Code. While section 411 of the charter contemplates that an appeal may be taken to the board of examiners from the refusal of the superintendent of buildings to approve the mode, manner of construction or materials proposed to be followed or used in the erection or alteration of a building, when it is claimed " that an equally good and more desirable form of construction can be employed " it does not confer upon the board of exam-

iners the right to approve a form of construction not sanctioned by the provisions of the Building Code. Neither the superintendent of buildings nor the board of examiners can lawfully act in violation of the provisions of the Building Code. The provisions of section 411 of the charter that the decision of the board of examiners "shall be final" means that the decision of the board when acting within its lawful statutory authority shall be final. The courts will not review discretionary acts of the board, but when the board acts beyond its limited statutory jurisdiction its action is void and in such cases the courts may and in proper cases doubtless will review and correct action taken by the board in excess of its authority. (*People ex rel. Tucker* v. *D'Oench,* 44 Hun, 33.)

It is earnestly argued in this case that the board of examiners in approving the plans proposed have not acted beyond their powers or contrary to law. Whether it did or not is not for us to determine. The question which the Appellate Division have certified to us assumes that it did. The question asks whether the action of the board of examiners is final and conclusive "even if the plans approved by the board of examiners did not comply with the Building Code." This question cannot be answered upon any other assumption than that the board of examiners approved plans that did not comply with the Building Code. To ask whether the approval, by a board, of plans that do not comply with the law is final is to ask whether if the board violates the law its action can be reviewed. To ask this question is to answer it. If the board approved plans that did not comply with the Building Code its action is not final; it is wholly void as beyond the limited statutory authority possessed by the board. Any action taken by the board within its authority and involving the exercise of a lawful discretion is final and not subject to judicial review, but when it acts beyond its powers its acts are void, and furnish no

justification for withholding injunctive relief if the case is in other respects such as to entitle the plaintiff to such relief. (*People ex rel. Tucker* v. *D' Oench, supra.*)

I advise that the order appealed from be affirmed, with costs, and that the first question certified be answered in the affirmative and the second question certified be answered in the negative.

WILLARD BARTLETT, Ch. J., HISCOCK, CHASE, COLLIN, CARDOZO and POUND, JJ., concur.

Order affirmed.