SARAH BREEN, Plaintiff, v. LEWIS J. VALENTINE, as Police Commissioner of the City of New York, and Others, Defendants.

Supreme Court, Special Term, New York County, March 23, 1939.

* Affd., 257 App. Div. ——.

*Kaufman & Weitzner*, for the plaintiff.

*William C. Chanler, Corporation Counsel [Frank Blaustein* of counsel], for the defendant Lewis J. Valentine, as police commissioner of the city of New York.

*Nordlinger, Riegelman & Cooper [Harold Riegelman, Jacob I. Charney* and *Abraham C. Bein* of counsel], for the defendants Niagara Sentinel and Allegheny & Seminole Cab Co., Inc.

Cotillo, J.  This is an application for a temporary injunction restraining the police department "from renewing the taxicab licenses of any owners of taxicabs to whom were transferred taxicabs by owners of more than one taxicab, without assumption by such transferees of all the outstanding tort liabilities of their respective transferors, incurred after the enactment of chapter 27-a of the Code of Ordinances of the City of New York and the Administrative Code of the City of New York."  A restraining order is also sought enjoining the issuance of taxicab licenses to future applicants who fail to assume all the outstanding tort liabilities of their respective vendors, where such vendors own more than one taxicab, and enjoining certain defendant corporations to whom taxicab licenses have been issued, without an assumption on their part of all the tort liabilities of their vendors, from exercising any rights and privileges conferred by such licenses.

The action is a taxpayer's action purporting to be brought pursuant to section 51 of the General Municipal Law.  Plaintiff contends that paragraph 7 of article III of chapter 27-a of the former Code of Ordinances (now § 436-2.0, subd. c, ¶ 7, of the Administrative Code of the City of New York) forbids the issuance of a taxicab license to the vendee or transferee of a taxicab unless such vendee or transferee assumes the outstanding tort liabilities of the vendor or transferor incurred after the enactment of such

section, *regardless of whether such tort liabilities arose from the operation of the cab transferred or from the operation of cabs other than that transferred.* The police department and the corporate defendants dispute plaintiff's interpretation of the statute and urge that, properly construed, the section in question was intended to permit the issuance of a license to the vendee or transferee of a cab if such vendee or transferee assumed the tort liabilities of the vendor or transferor which arose out of the operation of the cab transferred, without regard to tort liabilities of the vendor which occurred through circumstances having no connection with the operation of the cab transferred.

In the court's opinion it is, however, unnecessary to determine the question thus presented as to the proper construction and interpretation of the above-referred-to statute since the remedy invoked by the plaintiff, namely, a taxpayer's action, is not appropriate as a means of determining said question. It is well settled that mere illegality is not enough to warrant the institution of a taxpayer's action for injunctive relief. In the absence of a showing that the illegal acts, if continued, will result in waste of or injury to public property and funds, such an action will only lie if the threatened acts are such as are calculated to imperil the public interests or to work public injury or produce some public mischief. Thus, in *Western New York Water Co.* v. *City of Buffalo* (242 N. Y. 202) the Court of Appeals declared (at pp. 206, 207): " Mere illegality is not enough. The very nature and purpose of a taxpayer's action like the present one presume that there will be more than illegality in order to enable him to intervene. The basic theory of such an action is that the illegal action is in some way injurious to municipal and public interests and that if permitted to continue it will in some manner result in increased burdens upon and dangers and disadvantages to the municipality and to the interests represented by it and so to those who are taxpayers. It was not the intention of the statute that a taxpayer should be allowed to intervene and bring to the decision of the courts every act of a municipal officer which may be claimed to be illegal although concededly it is entirely innocuous. There are other penalties than a taxpayer's action for those municipal officers who disregard their responsibilities and transgress their limitations."

In *Campbell* v. *City of New York* (244 N. Y. 317) the same court, CARDOZO, J., writing, said (p. 330): " Their cause of action as taxpayers requires something more than proof of an illegal act. The illegality must tend to the detriment of the city either by the dissipation of its funds or by the threat of other injury so imminent and substantial as to make it proper that the taxpayers be protected by injunction."

No claim is made in the case at bar that the acts sought to be enjoined will in any way result, if permitted to continue, in waste of public funds or property or damage to such funds or property. It follows that the action may be maintained, if at all, only on a showing that the allegedly illegal acts are " in a real sense a menace to the *public* welfare." (*Southern Leasing Co.* v. *Ludwig,* 217 N. Y. 100, 104.) In that case Judge CARDOZO declared that the " menace must be imminent and substantial." It does not appear that any imminent and substantial menace to the public welfare will be the consequence if the licensing authorities continue to issue licenses according to their interpretation of the statute, or if the corporations to which licenses were issued, in alleged disregard of the statute, are permitted to exercise the privileges granted therein. Although section 436–2.0, subdivision 1, of the Administrative Code contains a legislative finding that the taxicab industry in the city of New York " is vested with a public interest " and that " certain present evils and public hazards " include " financial irresponsible operation whereby the ownership of taxicabs has been transferred in order to avoid tort obligations," it does not follow that the further granting of licenses to transferees of taxicabs without assumption by the transferees of all tort liabilities of the vendors, however incurred, will create an imminent and substantial menace to the public interest and welfare. The statute does not, it is to be noted, prohibit the transfer of taxicabs by an owner who has incurred tort liabilities. Such an owner is free, as far as the statute is concerned, to dispose of his cabs to any one who may wish to purchase them, whether for use as taxicabs anywhere in the world or for any other purpose or use. All that the statute purports to do is limit the issuance of licenses in the case of transferees who wish to use the transferred cabs for taxicab purposes in New York city. Enforcement of the statute in accordance with the interpretation placed upon it by plaintiff would at most tend to limit somewhat the market for taxicabs in the case of an owner who has incurred tort liabilities. Such enforcement could not compel a transferee to assume tort liabilities if he chose not to do so. Rather than assume all the tort liabilities of the transferor, regardless of whether they were incurred in the operation of the transferred cabs, one who has already accepted a transfer would, in all likelihood, either use the cabs elsewhere than New York city or not use them as cabs, or else sell them. The dangers to the public resulting from the operation of taxicabs by irresponsible persons would not be eliminated or appreciably lessened if the statute were enfocred in the manner contended for by plaintiff. Such enforcement could not prevent transfers in the future by owners with tort liabilities, nor could it

compel assumptions of tort liabilities by transferees in the case of transfers which have already taken place.

Under the circumstances the court is of the opinion that no case of " imminent and substantial " menace to the public if the statute is not enforced as plaintiff claims it should be is made out. The situation might be different if the statute prohibited transfers of cabs without assumption of all tort liabilities of the transferor.

The motion for a temporary injunction is, accordingly, denied.