ALBERT MECHTOLD, Plaintiff, *v.* WILLIAM S. TILFORD, as Building Inspector of the Town of Oyster Bay, et al., Defendants.

Supreme Court, Special Term, Nassau County, June 23, 1954.

*George William Marthen* and *Arthur A. Kaye* for plaintiff.

*Benjamin Zipper* for William S. Tilford, as Building Inspector, and another, defendants.

*Harold C. Fields* and *Arthur M. Waldman* for Jean V. Kessler and others, defendants.

HUNTINGTON, J. In a taxpayer's action under section 51 of the General Municipal Law, the plaintiff moves for a temporary injunction pending the trial of this action, to restrain the defendant builders from continuing with the construction of a private house in a development in Oyster Bay, and to restrain the defendant building inspector from issuing a certificate of occupancy for said house. The defendant builders cross-move to dismiss the complaint for failure to state a cause of action.

The action is based upon alleged defective foundations and footings in said house, as a result of using so-called " bank-run " material in the concrete. Plaintiff claims this violates the Building Code of the defendant town. Actually, the Building Code is silent on the use of " bank-run ". Specifically, it neither authorizes, nor forbids using " bank-run " in concrete foundations. However, specific provisions of the code do provide for a mixture of one part of cement to not more than two and one-half parts of sand, to five parts of coarse aggregate, and that the ingredients be accurately measured and free from *organic* matter (the word " inorganic " in the ordinance is obviously an error).

The defendants admit using " bank-run " in the foundation in question, but claim that using it complies with the Building Code and that in any event, the foundation is safe.

As to the first point, it is clear that the use of " bank-run " does not comply with the code. Affidavits by experts who seem well qualified, show that if material as it is dug from the ground, happens to meet the code proportions, it would be a rare accident; and that for the most part, the proportion of sand to gravel in " bank-run " would be far too high.

The proof on the second point, viz., safety of construction, is equivocal. Sweeping statements that it is being done all

over Nassau County may or may not be true and add little to assurance of safety.

As to the plaintiff's right to maintain the action, a novel question is presented. It seems settled law that a mere showing of illegality is not enough (*Breen* v. *Valentine,* 170 Misc. 590, affd. 256 App. Div. 1066; *Campbell* v. *City of New York,* 244 N. Y. 317); and the cases where the action by a private individual was permitted have usually involved a place of public assembly, such as a theatre (*Altschul* v. *Ludwig,* 216 N. Y. 459; *Brill* v. *Miller,* 140 App. Div. 602). However, it seems to me that there is no difference in principle, whether a building constructed in an unsafe manner collapses and injures a crowd of people, or whether it collapses and injures a few people. Although *Kaltenbach* v. *Benisch* (252 App. Div. 788), was a zoning case, it supports the assertion of such a right in the plaintiff with respect to a place where large numbers of people do not usually assemble, to wit: a gas station.

In the *Altschul* case (*supra*), there was no actual showing of danger in the proposed construction, it was assumed that failure to follow the code provisions designed for safety was " per se " illegal and dangerous. Just as here, we cannot say that a foundation poured with different proportions of ingredients will necessarily be unsafe, we must assume that the provisions of the code for measured proportions, are necessary safety requirements.

It appears equally well settled that the plaintiff need not have a special pecuniary interest in enforcing the law to maintain this type of action (*Altschul* v. *Ludwig, supra*), nor is it necessary that the threatened public injury be measurable in dollars and cents (*Brill* v. *Miller, supra*), and plaintiff does not claim that he has such an interest here.

Plaintiff's motives in bringing this action are attacked, but if the law is being violated, a complainant's motive for seeking enforcement of the law is immaterial.

A trial in this matter cannot be had until the Fall Term and since it would be academic then unless the " status quo " is maintained in the meantime, an injunction *pendente lite,* with a bond sufficient to protect the defendants against loss, if plaintiff be not sustained at the trial, is in order. As to the amount of the bond to be furnished by the plaintiff, the papers do not disclose any information relative to defendants' possible damage on this one house, in the event of judgment being ultimately rendered in his favor. The motion is not directed by its specific

phrasing at any other houses in this development, but if it is to mean anything, it would have to apply to them as well and the bond would have to be commensurate with the number of houses to which it applies.

The bond should be for an amount equal to the difference in cost per foundation, if graded material is used instead of " bank-run " multiplied by the number of houses the defendants have " bona fide " scheduled for construction at this time and prior to October 4, 1954.

The amount will be fixed in the order to be settled on notice and both sides are directed to submit such affidavits as they deem necessary to assist the court in determining the amount.

Plaintiff is also directed to furnish a bond for $250 in compliance with section 51 of the General Municipal Law, which amount can be included in the injunction bond as provided in said section.

Cross motion to dismiss the complaint is denied. Settle one order.